UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WHORTON,

                Plaintiff,

v.

JOAN ROGGENBUCK,
KIM FERRIS (FARRIS),
SHANTHI GOPAL,
JOE LAPUM, and
ALFRED BROWN,

                Defendants.

_____/

Case No. 2:16-cv-13885
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS ROGGENBUCK AND BROWN'S OCTOBER 2, 2017 MOTION FOR SUMMARY JUDGMENT (DE 32)

**I.    RECOMMENDATION**: The Court should review Plaintiff's claims against Defendants Roggenbuck, Brown and Lapum and **DISMISS** Plaintiff's claims against them for failure to state claims upon which "relief may be granted." 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  If the Court agrees with this conclusion, then it should also **DEEM MOOT** Defendant Roggenbuck and Brown's motion for summary judgment.  (DE 32.)  Alternatively, the Court could **GRANT** Defendants Roggenbuck and Brown's motion for summary judgment (DE 32) to the extent it seeks dismissal under Fed. R. Civ. P. 12(b)(6) for failure to

1

state claims against them, while still applying 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) to the claim against Defendant Lapum.

## II.   REPORT:

### A.   Plaintiff's Complaint

James Whorton is currently incarcerated at the Michigan Department of Corrections (MDOC) Woodland Center Correctional Facility (WCC).  (DE 34.)  On October 27, 2016, while incarcerated at WCC, Plaintiff filed the instant, verified civil rights complaint *in pro per* against five defendants – Joan Roggenbuck, (Kim) Ferris (Farris), (Shanthi) Gopal, Joe Lapum and Alfred Brown - in their personal and official capacities.  The facts underlying Plaintiff's complaint stem from the events of June 2014 and concern treatment he received following two self-inflicted cuts.  (DE 1 ¶¶ 10-27.)  Plaintiff alleges a violation of the Eighth Amendment to the United States Constitution and seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (DE 1 at 7-8.)

### B.   Prior Dispositive Motion by Defendants Farris and Gopal

On June 14, 2017, Defendants Farris and Gopal filed a combined motion to dismiss pursuant to Fed. Rules Civ. P. 8 and 12(b)(6).  (DE 23.)  I entered a report recommending that the Court grant this motion, as "Plaintiff ha[d] failed to state an Eighth Amendment claim of deliberate indifference against Defendants Gopal and Ferris 'upon which relief can be granted[.]'"  Fed. R. Civ. P. 12(b)(6).  (DE 36 at

2

12.)  On December 11, 2017, Judge Drain entered an order accepting and adopting the report and recommendation and granting the motion.  (DE 40.)

As a result, Defendants Farris and Gopal were terminated as Defendants.  Thus, the only remaining defendants are Roggenbuck, Lapum and Brown.  On December 18, 2017, the case was re-opened as to these Defendants.  (DE 41.)[1]

### C.     Instant Motion by Defendants Roggenbuck and Brown

On October 2, 2017, Defendants Roggenbuck and Brown filed a combined motion for summary judgment based on failure to exhaust, lack of personal involvement, and Eleventh Amendment immunity.  (DE 32.)  I issued an order requiring Plaintiff to file a response on or before November 27, 2017, which was the Monday following Thanksgiving.  (DE 33.)  On December 21, 2017, Plaintiff

---

[1] As my previous report and recommendation acknowledged, Defendant Lapum has yet to appear.  (DE 36 at 2 n.1)  By way of background, Plaintiff identifies this Defendant as "Joe Lapum," but the attached grievance lists him as "W. Joe Lapum."  (DE 1 at 4 ¶ 7, DE 1 at 10-11.)  The November 2016 attempt at service upon *Joe* Lapum at WCC was returned with the explanation that he was no longer employed by the MDOC.  (DE 6 at 5, DE 7 at 2-3.)  On March 31, 2017, the Court entered an order directing service without prepayment of costs and directing the MDOC to provide certain information for *Joe* Lapum.  (DE 16.)  On August 3, 2017, the USMS acknowledged receipt of documents for service of process upon three defendants, including *Warren* Lapum (DE 28 at 4), but, on October 30, 2017, the USMS informed the Court that the attempt at service was returned as "UNCLAIMED," (DE 35).

3

filed two responses. (DEs 42, 43.)[2] Judge Drain referred this motion to me for a report and recommendation. (DE 45.)

### D. Screening and Proceedings *In Forma Pauperis*

Notwithstanding the fact that Defendants bring their motion pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(a) (*see* DE 32 at 1, 8, 10), the screening statute provides that "[t]he court shall review, before docketing, if feasible or, in

---

[2] Plaintiff has filed affidavits in which he claims that his "legal writer let [his] deadline expire without filing [his] response[,]" he was "denied access to the court[,]" and he "filed a grievance concerning this issue." (DE 37 ¶¶ 5-7, DE 39 ¶¶ 5-7.) Elsewhere, he contends that his tardy response had to do with sending mail over the Thanksgiving holiday weekend. (DE 44 at 4.) As such, if the Court were to consider the pending motion for summary judgment (DE 32), I recommend that it recognize and consider Plaintiff's responses, even though they were filed past the due date. (DEs 42, 43.)

At the same time Plaintiff filed his responses, Plaintiff filed yet another affidavit, in which, *inter alia*, he complains about his legal writer at WCC and access to the law library. (DE 44 at 1, 4.) He asks to be returned to Macomb Correctional Facility (MRF), where "the legal writer was knowledgeable about law, and was able to help [Plaintiff]." (DE 44 at 2 ¶ 5.) He also asks the Court "to please postpone [his] claim [un]til [he is] able to receive the proper legal assistance." (DE 44 at 2 ¶ 8.) At this time, the Court is not in a position to order Plaintiff's transfer from WCC to MRF. Besides, should Plaintiff wish to apply for the recruitment of *pro bono* counsel, he may do so in accordance with 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). However, Plaintiff is forewarned that the Court does not have the authority to appoint a private attorney for Plaintiff in this civil matter, because "[t]here is no right to recruitment of counsel in federal civil litigation," *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014). Also, with respect to prisoner civil rights cases in particular, the Court of Appeals for the Sixth Circuit has held that "there is no right to counsel. . . . The appointment of counsel in a civil proceeding is justified only by exceptional circumstances." *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004) (citations omitted).

any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  It further provides that, "[o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"  28 U.S.C. § 1915A(b)(1).

Likewise, the *in forma pauperis* statute provides that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]"  28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff is proceeding *in forma pauperis* in this matter.  (*See* DEs 2, 4, 5, 15-17.)  Thus, the Court begins its consideration of this lawsuit through the common lens of these statutes.

### E. Discussion

#### 1. The facts underlying Plaintiff's complaint stem from the alleged events of June 2014.

Plaintiff claims that, in June 2014, he was a mental patient housed at the MDOC's Ionia Correctional Facility (ICF).  (DE 1 ¶ 10.)  According to Plaintiff, he twice cut his stomach and in each case was sent to the hospital (presumably Duane Waters Health Center in Jackson, Michigan); however, in neither case was his stomach repaired.  (DE 1 ¶¶ 11-12.)  Plaintiff was discharged and sent to WCC,

5

which he describes as "a prison for mental patients," and where Roggenbuck was the Warden. (DE 1 ¶ 13; *see also* DE 1 ¶ 4.) Plaintiff describes his treatment, including the use of a colostomy bag, and claims that, "[d]uring those . . . first 6 . . . months, [he] was given Vicodin/Norco pain medications." (DE 1 ¶¶ 14-16.) When this prescription expired, he was given "generic Tylenol, which did not help with the pain and discomfort he was having." (DE 1 ¶ 19.)[3]

Meanwhile, in December 2014, Plaintiff completed an MDOC Step I grievance form in which he complained that Farris and Gopal refused to re-order pain medication. (DE 1 at 10 [WCC-14-12-0751-28a(28e)]; *see also* DE 1 ¶ 18.) In the three following months, he kited health care about the need for an "abdominal binder" and pain medication, among other concerns. (DE 1 at 23-27; *see also* DE 1 ¶ 20.) According to Plaintiff, Defendants Gopal and Farris "refused to submit the requests or to have his Norco pain medications refilled." (DE 1 ¶ 21.)

In January 2015, Lapum provided and Brown reviewed the Step I grievance response, which noted: "Prisoner was seen multiple times in the clinic from [June 23, 2014] to [December 23, 2014]. Physician discontinued his Norco after 6

---

[3] During September and October 2014, Plaintiff kited health care about "severe pain," among other things. (DE 1 at 16-22.) He was scheduled for a September 26, 2014 appointment, but, apparently, he "was never called-out." (DE 1 at 18-19.) As of October 8, 2014, health care was awaiting "MSP review for device to keep ostomy bag in place." (DE 1 at 22.) (*See also* DE 1 ¶ 17.)

6

months post[-]surgery and replaced with Tylenol." (DE 1 at 10-11, DE 1 at 6 ¶ 22; *see also* DE 1 at 5 ¶¶ 7-8.) Plaintiff completed a Step II grievance appeal, which Roggenbuck denied in January 2015. (DE 1 at 12-13.) Finally, Plaintiff completed a Step III grievance appeal, which was rejected in April 2015. (DE 1 at 12, 14.)

### 2. Personal involvement

Plaintiff passively mentions Defendants Lapum and Brown within his complaint. Although Lapum has yet to appear, Plaintiff identifies him as WCC's Resident Nurse Manager who "supervised the nursing staff to ensure that all practices and procedures were properly followed." (DE 1 ¶ 7.) Also, Plaintiff describes Defendant Brown as WCC's Health Unit Manager (HUM) and claims that Defendant Brown "supervised the nurses and resident nurse managers." (DE 1 ¶ 8.) Then, Plaintiff alleges:

> Prisoner Whorton's grievance was denied concerning this issue, and the respondent, Joe Lapum, and reviewer, Alfred Brown, did nothing to resolve his ongoing pain issues. Ultimately, the grievance was exhausted when it was denied at Step III because of a timing issue.

(DE 1 ¶ 22.) Even though Defendant Lapum responded to and Defendant Brown reviewed the January 2015 Step I grievance response in WCC-0751 (DE 1 at 10-11), where a defendant's only role "involve[s] the denial of administrative grievances or the failure to act[,]" he "cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

7

Likewise, the complaint passively refers to Defendant Roggenbuck, describing her as WCC's Warden and alleging that, "[b]y statute, the warden is responsible for ensuring the safety and well-being of prisoners under his/her supervision." (DE 1 ¶ 4.) Plaintiff further pleads that, "[a]fter being discharged from Duane Waters Prison Hospital, Prisoner Whorton was sent to [WCC], a prison for mental patients, where Joan Roggenbuck was the Warden." (DE 1 ¶ 13.) Roggenbuck signed the January 20, 2015 Step II grievance appeal response in WCC-0751. (DE 1 at 12-13.) Here, too, to the extent Plaintiff's claim against Defendant Roggenbuck is based upon her denial of Plaintiff's grievance appeal, she "cannot be liable under § 1983." *Shehee*, 199 F.3d at 300. Furthermore, to the extent Plaintiff's claim against Defendant Roggenbuck is based upon her supervisory role as WCC's Warden, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982).

Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (citation omitted). True, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct

the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation of* Binder, M.J.) (internal citations omitted).[4]

The Court has reviewed the 5 substantive pages of Plaintiff's October 27, 2016 complaint.  (DE 1 at 4-8.)  Although Plaintiff makes a factual allegation and sets forth a cause of action generically against *Defendants* (*see* DE 1 at 7 ¶¶ 27, 29), Plaintiff's express mentions of Defendants Roggenbuck, Brown and Lapum within the identification of parties and the factual allegations (*see* DE 1 ¶¶ 4, 7, 8, 13, 22), even if true, do not state a claim upon which "relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  To the extent that the Court can construe these pleadings liberally enough to find even an extremely limited allegation of personal involvement by any of these three defendants (and that is a stretch), their alleged supervisory involvement provides no legal bases for pursuing claims against them.[5]  Stated otherwise, even construing Plaintiff's complaint "in

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

[5] *See Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 80–81 (6th Cir.1995) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement is required for a supervisor to incur personal liability.").

the light most favorable to the plaintiff" and accepting "all allegations as true[,]" *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), Plaintiff has failed to state a claim against Defendants Roggenbuck, Brown or Lapum upon which "relief may be granted[.]" 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### F. Conclusion

In sum, the Court should review Plaintiff's claims against the remaining Defendants – Roggenbuck, Brown and Lapum – and **DISMISS** them for failure to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). If the Court agrees with this conclusion, then it should also **DEEM MOOT** Defendant Roggenbuck and Brown's motion for summary judgment. (DE 32.) Alternatively, as to Defendants Roggenbuck and Brown, the Court could **GRANT** their motion for summary judgment (DE 32) to the extent it seeks dismissal of the claims against them for failure to satisfy Fed. R. Civ. P. 12(b)(6), while still applying 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) to the claims against Defendant Lapum.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/*Anthony P. Patti*
Anthony P. Patti
Dated: October 9, 2018      UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on October 9, 2018, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti